# U.S. Department of Homeland Security

*Complaint of Carlos Atkinson and Thomas J. Ridge[1]*
*Secretary, Department of Homeland Security*
DHS Complaint Number 03-0048
Agency Case Number TD 02-2207

JUN 2 7 2003

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Francisco Rivera
4 Cienfuegos
Brownsville, TX 78521

Dear Mr. Rivera:

This letter transmits the Department of Homeland Security's Final Agency Decision on Mr. Carlos Atkinson's complaint of employment discrimination identified above. A thorough analysis of the record, which is incorporated in the decision, shows that the evidence is not sufficient to support Mr. Atkinson's claim. Therefore, a finding of no discrimination is rendered. Mr. Atkinson is not entitled to relief.

If Mr. Atkinson is dissatisfied with this decision, he may file an appeal according to the instructions that follow the decision. A copy of Mr. Atkinson's appeal rights and EEOC Form 573 are enclosed.

Sincerely,

Daniel W. Sutherland

Daniel W. Sutherland
Officer for Civil Rights and Civil Liberties

Enclosures

DEFENDANT'S
EXHIBIT
11
C.A. B-04-039

---

[1] This complaint was originally filed against the Department of the Treasury. The complainant was an employee of the U.S. Customs Service (now Customs and Border Protection), which was a Treasury bureau. Effective March 1, 2003, the U.S. Customs Service was transferred to the Department of Homeland Security. The Department of the Treasury will continue to process complaints for those entities that were part of Treasury for a transition period.

Washington, D. C. 20528

cc: Mr. Carlos Atkinson
580 Sunshine Road
Brownsville, TX 78521

Ms. Marcia H. Coates
Director, Office of Equal Opportunity Program
Department of the Treasury
1500 Pennsylvania Ave., NW
Metropolitan Square, 6th Floor, Room 6068
Washington, DC 20220

Mr. Jerry Armstrong
Director, Treasury Complaint Center (Dallas)
4050 Alpha Road, Stop 1010 MSRO
Dallas, TX 75244-4201

Ms. Linda L. Batts
Special Assistant to the Commissioner (EO)
Bureau of Customs and Border Protection
Department of Homeland Security
Ronald Reagan Building
1300 Pennsylvania Avenue, NW, Room 3.2A
Washington, DC 20229

FINAL AGENCY DECISION IN THE
DISCRIMINATION COMPLAINT OF:      CARLOS ATKINSON AND
                                   THOMAS J. RIDGE, SECRETARY,
                                   DEPARTMENT OF HOMELAND SECURITY
CASE NUMBER:                       TD 02-2207

## INTRODUCTION

This is the Departmental decision in the discrimination complaint filed by
Carlos Atkinson (hereinafter, the Complainant), against the Bureau of Customs and
Border Protection, based on his age (60, date of birth - March 16, 1941).[1]

## PROCEDURAL CHRONOLOGY

| | |
|---|---|
| Date of Initial EEO Counselor Contact: | March 7, 2002 |
| Date of Discriminatory Incident: | December 4, 2001[2] |
| Date Notice of Right to File Issued: | March 28, 2002 |
| Date Notice of Right to File Received: | April 2, 2002 |
| Date Formal Complaint Filed: | April 16, 2002 |
| Date Formal Complaint Accepted: | May 3, 2002 |
| Date(s) of Investigation: | September 13 - 20, 2002 |
| Date Copy of Investigative File Issued: | November 5, 2002 |
| Date Election Rights Issued: | November 22, 2002 |
| Date of Election (Final Decision): | December 18, 2002 |
| Authority for Decision: | 29 C.F.R. §1614.110 |

## ISSUE

Whether the Complainant was discriminated against, because of his age (60, date of
birth - March 15, 1941), when on December 4, 2001, the Complainant was not selected
for the position of Supervisory Customs Inspector (GS-1890-13), advertised through
vacancy announcement number BLTN-/01-014JJF.

## FACTUAL BACKGROUND

At the time of the filing of the complaint, the Complainant was a Supervisory Customs
Inspector (GS-1890-12) in the Office of Field Operation, South Texas Customs
Management Center (Laredo). The Complainant's duty station was the Port of
Brownsville (Texas). (IF Exhibit 7, p. 60)

---

[1] This complaint was originally filed against the Department of the Treasury. The Complainant was an
employee of the U. S. Customs Service (now Customs and Border Protection), which was a Treasury
bureau. Effective March 1, 2003, the U. S. Customs Service was transferred to the Department of
Homeland Security. The Department of the Treasury will continue to process these cases during a
transition period.
[2] The Complainant contended that he became aware of the alleged discriminatory incident on (or about)
January 27, 2002. (IF Exhibit 1, p. 7 and IF Exhibit 2, p. 29)

2

The Agency advertised for several Supervisory Customs Inspectors (GS-1890-13), through vacancy announcement number BLTN-/01-014JJF, from July 18 through August 7, 2001. The incumbent of the position would serve as the Branch Manager (Branch Chief) for field operations, assuming responsibility for the management of all passenger, cargo, and carrier processing; the implementation and coordination of national, regional, and Port programs in the Branch; the management of field operations activities, by identifying areas in which programs and procedures should be modified or revised; and visitation of off-site operations to observe actual operating conditions. Additionally, the incumbent of the position would also assume responsibility for advising higher management within the Port on problems and difficulties relating to the inspectional and enforcement processes and their impact on Border programs and issues. (IF Exhibit 8, pp. 65-67)

Prospective candidates were required to have one year of specialized experience equivalent to the GS-12 level, demonstrating the ability to make rapid, accurate judgments and decisions relating to the application of regulations, instructions, and procedures for examining and inspecting imports for admission to the United States or inspectional work relating to investigations and law enforcement. Administrative, managerial, or supervisory experience (or demonstrated potential to perform administrative, managerial or supervisory duties) was also required. Eligible candidates were evaluated on the ability to analyze, to plan and organize, and to communicate orally. Highly qualified candidates were further evaluated on the ability to communicate in writing and to effectively promote Equal Employment Opportunity programs. (IF Exhibit 8, pp. 65-66)

On (or about) August 6, 2001, the Complainant applied for the GS-13 Supervisory Customs Inspector vacancy in the Port of Brownsville. The vacancy was in the cargo processing area. (IF Exhibit 6, p. 56 and IF Exhibit 10, pp. 71-84)

The Selection Register for the position was prepared on September 18, 2001, and included, in alphabetical order, twelve (12) best-qualified candidates:

| Candidate | Age (Date of Birth) |
|---|---|
| Aguilar | 46 (August 14, 1955) |
| N. Alcala | 40 (February 11, 1961) |
| G. Aldaz | 40 (March 16, 1961) |
| **Complainant** | **60 (May 9, 1941)** |
| J. Castillo | 37 (September 14, 1964) |
| L. Guardiola | 45 (April 02, 1956) |
| D. Lambrix | 46 (February 24, 1955) |
| A. Martin | 55 (August 27, 1946) |
| O. Martinez | 47 (August 19, 1954) |
| Z. Medina | 55 (August 26, 1946) |

3

|                              |                          |
|------------------------------|--------------------------|
| E. Ochoa                     | 38 (April 20, 1963)      |
| H. Salinas, Jr.              | 39 (August 11, 1962)     |
| (IF Exhibit 9, pp. 69-70)    |                          |

The best-qualified candidates were interviewed by Director, South Texas Management Center (Laredo), Gurdit Dhillon (age 61; date of birth - May 26, 1940), who also served as the recommending official. The interview notes are not included in the record. (IF Exhibit 6, pp. 47-48, and IF Exhibit 28, pp. 507-508)

On December 4, 2001, Candidate Aldaz was selected for the position by Assistant Commissioner, Office of Field Operations, Bonnie G. Tischler (age 56; date of birth - February 18, 1945). (IF Exhibit 9, p. 69)

## APPLICABLE LAW

This case involves an allegation of disparate treatment, that is, that the agency treated the Complainant less favorably than others because of the Complainant's membership in a protected group. International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977).

The Supreme Court developed a standard of analysis in the case of McDonnell Douglas v. Green, 411 U. S. 792 (1973), which is applied in making determinations regarding alleged discriminatory treatment in disparate treatment cases. Under the McDonnell Douglas standard, the Complainant has the initial burden of establishing that there is some substance to his allegation of discrimination. In order to accomplish this burden, the Complainant must establish, by a preponderance of the evidence, a prima facie case -- that is, a body of evidence such that, were it not contradicted, the inference may be made that there was discrimination. A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.56(c)(2). The establishment of a prima facie case is not sufficient in and of itself to support a finding of discrimination; rather, it simply allows an inference of discrimination.

Once a prima facie case has been established, management has the burden of dispelling the inference from the prima facie case by articulating legitimate, non-discriminatory reasons for its actions. Furnco Construction Corp. v. Waters, 438 U. S. 567 (1978). To rebut the prima facie case, the agency must provide an explanation sufficient that, if not later shown to be a pretext, the inference raised by the prima facie case would fall. In addition, the reasons must be sufficiently clear and specific, so that the Complainant will have a fair opportunity to demonstrate pretext. This is not a burden of persuasion, which at all times remains with the Complainant, but rather a burden of production -- to "clearly set forth, through the introduction of admissible

4

evidence, the reason for [its employment decision]." <u>Texas Department of Community Affairs v. Burdine</u>, 450 U. S. 248, 254-256 (1981).

Once management has articulated legitimate, non-discriminatory reasons for its action, the Complainant has the burden to prove, by a preponderance of the evidence, that the reasons given by management were not the true reasons, but a pretext for discrimination. The Complainant can establish pretext either directly (by showing that a discriminatory reason more likely motivated management), or indirectly (by showing that the reasons given for management's actions are simply not believable). <u>Burdine</u>, 450 U. S. at 253. Generally, the Complainant may show pretext, among other ways, either by presenting direct evidence of discriminatory statements or the past personal treatment of the Complainant, or by using comparative evidence, such as statistics of management's employment practices or evidence that management departed from its normal policy. At that point, the trier of fact must decide which party's explanation of the employer's motivation it believes. <u>U. S. Postal Service Board of Governors v. Aikens</u>, 460 U. S. 711, 716 (1983). "But a reason cannot be proved to be pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." <u>St. Mary's Honor Center v. Hicks</u>, 509 U. S. 502 (1993).

To establish a prima facie case of age discrimination involving a non-selection, the Complainant must demonstrate that: 1) he belonged to a protected group; 2) he applied for a position for which he was qualified; 3) he was not selected for the position; and 4) after his rejection, the job remained open and the Agency continued to seek candidates from persons of his qualifications, or that someone from outside of his protected group was selected. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Lucero v. Martin</u>, EEOC Appeal No. 01911170 (1991).[3] The Complainant can also establish a prima facie case by demonstrating that the selected candidate, although a member of the Complainant's protected group, was significantly younger than the Complainant. <u>Haughness v. Department of the Interior</u>, 01832887, 1212/B5 (1985); <u>Miller v. Borden</u>, 168 F.3d 308 (7th Cir. 1999). In all instances, the Complainant must demonstrate that age was a causative factor in the adverse employment action in the sense that, but for the employer's motive to discriminate on the basis of age, the adverse employment action would not have occurred. <u>Loeb v. Textron, Inc.</u>, 600 F.2d 1003 (1st Cir. 1979).

---

[3] The evidentiary framework developed in the context of Title VII cases has been found to be applicable to proceedings under the Age Discrimination in Employment Act (ADEA). <u>Elwood v. Pina</u>, 815 F.2d 173, 176 (1st Cir. 1987); <u>Coburn v. Pan American World Airways, Inc.</u>, 711 F.2d 339, 342-3 (D.C. Cir. 1983) <u>cert.</u> <u>denied</u> 464 U.S. 994 (1983); <u>Loeb v. Textron, Inc.</u>, 600 F.2d 1003, 1014-16 (1st Cir. 1979).

5

## ANALYSIS

**- Prima Facie Case -**

The Complainant, who belongs to a protected group because of his age (60, date of birth - May 26, 1940), applied for a position for which he was qualified. Despite the Complainant's qualifications, the Agency selected a candidate from within the Complainant's protected age group who was 20 years younger than the Complainant. In Haughness v. Department of the Interior, the complainant was able to establish a prima facie case of discrimination because the selected candidate was 18 years younger and in Miller v. Borden, the Court concluded that a 10-year difference in the ages of the plaintiff and the selected candidate was significant to establish a prima facie case. Thus, based on Commission and Court precedents, we find that the Complainant has established a prima facie case of age discrimination.   (IF Exhibit 9, pp. 69-70 and IF Exhibit 10, pp. 71-84)

**Management's Articulation -**

Since the Complainant has established a prima facie case of age discrimination, the burden shifts to management to articulate a legitimate, non-discriminatory reason for its action.

Assistant Commissioner Tischler alleged that her selection of Candidate Aldaz was based upon Director Dhillon's recommendation.  (IF Exhibit 28, pp. 507-508)

Director Dhillon, in comparing the qualifications of the Complainant and Candidate Aldaz, alleged that Aldaz better cited his overall knowledge, skills, and abilities in his application package and, during the interview process, demonstrated a better grasp of systems and processes.  Dhillon alleged that, "This could be attributed to the fact that Mr. Aldaz gained tremendously in the areas of [knowledge, skills, and abilities] because of working at one of the largest [Port of Entries] on the southern border compared to the Complainant's experience gained at a mid-size operation."  (IF Exhibit 2, p. 29 and IF Exhibit 49-51)

**- Pretext -**

The Complainant must now demonstrate that management's articulation was not the true reason for its action, but a pretext to mask unlawful discrimination.

The Complainant alleged that Director Dhillon denied him proper consideration for the position during the interview process, as will be discussed further.  We note that interviews can be particularly subjective when rating potential for a job, yet subjective factors alone do not make a selection discriminatory.   Weinstein v. U.S. Postal Service, 01821779, 1031/C1 (1983).

6

The Complainant alleged that during the interview, Director Dhillon made inquiries about his sons, both of whom are Agency employees. One son was involved in a proposed disciplinary action and the other son is an aggressive union representative who management allegedly believes is difficult to deal with. Notwithstanding the fact that Dhillion denied the allegation, we find no evidence that the alleged inquiries were related to the Complainant's age. (IF Exhibit 1, p. 9, IF Exhibit 4, p. 43, and IF Exhibit 5, pp. 49-50)

The Complainant alleged that during the interview process, Director Dhillon appeared non-interested, because Dhillon never addressed the critical questions -- the criteria relating to work experience and job knowledge. The Complainant alleged that he was asked two questions. The questions, according to the Complainant, were: 1) What would the Complainant do if he became a Chief Inspector; and 2) How would the Complainant handle traffic management? In response, Dhillon stated that the candidates were asked the same basic questions and he was looking for certain responses that explained a concept or process. We find that the questions were related to the Supervisory Customs Inspector position. The Complainant has not asserted that non-protected group and younger protected group candidates were treated more favorably. (IF Exhibit 4, pp. 42-44 and IF Exhibit 5, p. 49)

The Complainant alleged that because of conflicts between Director Dhillon and Port Director, South Texas CMC (Brownsville), Margie Gutierrez (age 46, date of birth - August 11, 1955), Dhillon deviated from the practice of having an interview panel and chose to interview him in Brownsville while Gutierrez was out of town. The Complainant alleged, "This type of situation caused me irreparable harm where my chance for promotion was diminished by [Director] Dhillon's actions, and this is also another reason why I did not receive proper consideration for promotion." Gutierrez concurred that there was a deviation from the practice, adding that she was on a detail during the interview process, but could have been reached by telephone. There is no evidence that the Complainant was treated less favorably than non-protected and younger protected group candidates, for Guterrez was excluded from all interviews. (IF Exhibit 4, p. 46 and IF Exhibit 6, pp. 53-55) Even if we find Dhillon deviated from normal practice because of his conflict with the Port Director, there is no showing Complainant's age played any role in the decision at issue.

The Complainant alleged that during the selection process, improper consideration was given to the Port of Brownsville's seizure history. Allegedly, Director Dhillon had already made up his mind that the position would not be offered to a Port of Brownsville supervisor (Candidate Aldaz was from the Port of El Paso). Port Director Gutierrez testified that she understood comments had been made to one or two candidates about the possibility of not promoting from within and getting away from the 'good old boy' system. Despite the Complainant's allegation and Gutierrez's testimony, there is no evidence that the Complainant was treated less favorably than non-protected and younger protected group candidates who were from the Port of Brownsville, specifically,

7

GS-12 Supervisory Customs Inspectors Aguilar (age 46), Alcala (age 40), Castillo (age 37), Martinez (age 47), Medina (age 55), and Ochoa (age 38). (IF Exhibit 1, p. 9, IF Exhibit 4, p. 43, IF Exhibit 12, p. 115, IF Exhibit 13, p. 190, IF Exhibit 14, p. 207, IF Exhibit 18, p. 369, IF Exhibit 19, p. 380, and IF Exhibit 20, p. 391)

The Complainant alleged that during the selection process, improper consideration was given to his extensive Agency experience including, but not limited to, his experience as a supervisor. We find that the Complainant's and Candidate Aldaz's GS-12 work experience was comparable, including their supervisory experience. The Complainant had been a GS-12 since 1989 and Aldaz had been a GS-12 since 1990. Both candidates had "fully successful" ratings. EEOC has taken the position that greater years of experience do not necessarily make one candidate more qualified than another. McGettigan v. Department of the Treasury, EEOC Appeal No. 01924372 (February 24, 1993); Ford v. Department of Health and Human Services, EEOC Appeal No. 0193521 (December 19, 1991). (IF Exhibit 4, p. 43-44, IF Exhibit 10, pp. 71-84, and IF Exhibit 11, pp. 85-114)

The Complainant also alleged that approximately 80 percent of the knowledge, skills, and abilities of the Supervisory Customs Inspector position are directly related to cargo operations, which he possesses. The Complainant alleged that Candidate Aldaz did not have the requisite experience and, after the selection, had to be reassigned to a different area. Port Director Gutierrez, the Complainant's third-level supervisor and Candidate Aldaz's second-level supervisor, concurs with the Complainant's allegation, contending that following the selection, Aldaz requested and was reassigned to passenger operations, the area in which he worked at the Port of El Paso. A review of the vacancy announcement reveals that specialized experience in cargo operations was not required of prospective applicants. The requirement was for equivalent GS-12 experience that demonstrated the ability to make rapid, accurate judgments and decisions involving application of the regulations, instructions, and procedures for examining and inspecting imports for admission to the United States or inspectional work concerning investigations and law enforcement. Candidate Aldaz's application package reveals that he possessed the qualifications for the position, as specified in the vacancy announcement. (IF Exhibit 4, p. 44, If Exhibit 6, pp. 53 and 55-57, and IF Exhibit 8, pp. 65-67)

The Complainant alleged that Candidate Aldaz received preferential treatment because he was from the same area (Port of El Paso) as Director Dhillon. While acknowledging that he and Candidate Aldaz had previously worked at the same duty station, Dhillon contended that Aldaz was five positions removed and he barely knew Aldaz. Dhillon further alleged, "It ha[d] been a professional relationship - work related. When I interviewed Mr. Aldaz, I did not recognize him; however, his name was familiar to me." Assuming, arguendo, that preferential treatment was afforded Aldaz because of his previous working relationship with Dhillon, we note that unfair business decisions are not within the purview of the employment discrimination laws, only business decisions

8

motivated by discrimination.  Turner v. Texas Instruments, Inc., 555 F.2d 1251, 15 FEP Cases 746, 750 (5th Cir.).  (IF Exhibit 1, p. 12, IF Exhibit 2, p. 29, and IF Exhibit 5, p. 47) The Complainant alleged that the current trend is to bring young candidates from outside of the Port of Brownsville for supervisory positions.  The Complainant alleged, "Let the record note that since September 1999, several supervisory positions have been filled by . . . persons who have been either promoted and/or transferred to the Brownsville [Port of Entry] from within the Laredo [Customs Management Center] or outside the Laredo [Customs Management Center], while the applicants at Brownsville . . . are being bypassed."  However it appears that non-protected and younger protected group candidates have been similarly impacted by the practice of recruiting outside of the Port.  (Admin File, Exhibit 6, IF Exhibit 1, pp. 11-12, IF Exhibit 5, p. 51 and IF Exhibit 6, p. 57)

Having reviewed the application packages submitted by the Complainant and Candidate Aldaz, we do not find that Complainant's qualifications for the position were so superior to the selectee's as to compel us to find that the reasons for the selection were pretextual.  Moreover, the Complainant, through his pretext arguments, establishes a causal connection between the non-selection and several factors, none of which we find are related to the Complainant's age.  Consequently, we cannot conclude, by a preponderance of the evidence, that the decisions of Director Dhillon, the interviewing and recommending official, and Commissioner Tischler, the selecting official, were improperly motivated by age discrimination.  (IF Exhibit 5, p. 50, IF Exhibit 10, pp. 71-84, and IF Exhibit 11, pp. 85-114)

In promotion and appointment cases, the general rule is that the agency is free to choose among equally qualified applicants, absent showing of a discriminatory motive. Beasley v. Department of Transportation, 01873049, 1800/A2 (1988).  Court and Commission precedents have consistently held that when there are equally desirable candidates competing for the same position, and, absent discrimination, the trier of fact should not substitute his judgment for the legitimate exercise of managerial discretion. Jenkins v. Department of Interior, EEOC Request [8*] No. 05940284 (March 03, 1995); Shapiro v. Social Security Administration, EEOC Request No. 05960403 (December 06, 1996).

We find that the Complainant was not discriminated against, because of his age, when not selected for the Supervisory Customs Inspector position.

## CONCLUSION

It is the decision of the Department of Homeland Security that a finding of no discrimination is appropriate in this matter and the Complainant is not entitled to relief.